KERMETZ ET AL., APPELLEES, *v.* COOK-JOHNSON REALTY CORP., APPELLANT; CITY OF YOUNGSTOWN ET AL., APPELLEE.

(No. 77AP-59—Decided December 29, 1977.)

*Messrs. Harrington, Huxley & Smith* and *Mr. Frederick S. Coombs, III,* for appellees Lewis R. Kermetz et al.

*Mr. Nils P. Johnson,* for appellant.

*Mr. James E. Roberts,* for appellee city of Youngstown.

*Mr. Joseph Schiavoni,* for appellee Frank Pondillo et al.

*Mr. William J. Brown,* attorney general, and *Mr. Gene W. Holliker,* for appellee Ohio Department of Transportation.

HOLMES, J. This matter involves an appeal from the Court of Claims, which court had dismissed the third-party complaint brought by the Cook-Johnson Realty Corp. against the Ohio Department of Transportation, such dismissal being upon the basis that the complaint

was one sounding in appropriation; and in that the Court of Claims had no jurisdiction in appropriation, the complaint did not state a cause for which that court could give relief.

This case brings up for further discussion and refinement some areas of rather intricate law to which this court has previously addressed itself, most notably in the case of *J. P. Sand & Gravel Co.* v. *State* (1976), 51 Ohio App. 2d 83, decided June 8, 1976, *State, ex rel. Nicholson*, v. *Jackson* (1977), 54 Ohio App. 2d 215, and the unreported case of *State, ex rel. Edmisten*, v. *Jackson*, No. 75AP-557, decided July 1, 1976.

The factual pattern which gave rise to this action initially, and the history of the case, are as follows: Mr. and Mrs. Lewis Kermetz commenced an action in the Court of Common Pleas of Mahoning County against the defendant-appellant, Cook-Johnson Realty Corp., the city of Youngstown, and Mr. and Mrs. Frank Pondillo. The complaint alleged that the plaintiffs had purchased a home from the Pondillos on a tract of land adjacent to limited-access state highway No. 11, which tract had been developed by Cook-Johnson Realty Corp.

The complaint further alleged that the plaintiffs had suffered damages to their home and property, as well as emotional distress, as a result of flooding waters coming onto their property from the state highway, and that these waters flowed from the highway due to the faulty sewer drainage system installed previously by the defendant Cook-Johnson.

Additionally, the complaint alleged that the city of Youngstown had negligently installed a water main which had interfered with the adopted state drainage plans; further that the defendants Pondillo, as the former owners, had been aware of the flooding conditions and problems, and had failed to reveal this fact to the plaintiffs when the property was sold to the plaintiffs.

Defendant Cook-Johnson, in its answer, denied that it had negligently installed the storm sewer and, as stated, filed its third-party complaint against the Ohio Director of Highways, alleging that the state had negligent-

ly permitted the city of Youngstown to engage in its construction which interfered with the proper operation of the sewer drainage system. The matter was thereafter transferred to the Court of Claims from the Common Pleas Court of Mahoning County. The Attorney General filed a motion to dismiss in the Court of Claims, stating, among other points, that the plaintiffs' complaint stated a cause of action in appropriation; and that the Court of Claims lacked subject matter jurisdiction over such an action.

The Court of Claims having sustained the state's motion to dismiss, the defendant Cook-Johnson appeals to this court, setting forth the following assignment of error:

"The Court of Claims erred as a matter of law in ruling that Plaintiff's complaint made out a case in appropriation over which the Court of Claims had no subject matter jurisdiction."

As noted above, this appeal presents an opportunity for this court to clarify and, or, amplify, what it has heretofore stated in this area of the law. The complaint in *J. P. Sand & Gravel, supra*, contained two theories upon which relief was claimed by the plaintiff. The first claim sounded in appropriation; the second claim sounded in tort, alleging an abuse of the state's power of eminent domain to the effect that a delay had taken place in the appropriation, which in turn had occasioned a loss of value of the plaintiff's property.

As to the first claim in *J. P. Sand & Gravel*, this court specifically held that the Court of Claims did not have jurisdiction to entertain actions involving the appropriation of property, and that the appropriate remedy would be an action in mandamus leading to an appropriation proceeding in the Common Pleas Court, where a jury could assess the value of the damages for property taken. Accordingly, we held, in paragraphs one and two of the syllabus of the case, as follows:

"1. The Court of Claims, pursuant to R. C. 2743.02, is deprived of jurisdiction in matters involving the appropriation of private real estate.

"2. Where a property owner claims that his property has been taken by the state; that he had been damaged;

and that appropriation proceedings have not been instituted, the owner may proceed to seek a writ of mandamus to compel the initiation of such proceedings.''

The basis of this court's holding in *J. P. Sand & Gravel* was that there being a remedy available to the plaintiff in an appropriation action, pursuant to R. C. Chapters 163 and 5519, which had existed prior to the Court of Claims Act, there could, according to R. C 2743.02(A), be no action against the state in the Court of Claims. Such section reads as follows:

"The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties, subject to the limitations set forth in this chapter. To the extent that the state has previously consented to be sued, this chapter has no applicability.''

As to the second cause of action in *J. P. Sand & Gravel,* which cause sounded in tort, this court in effect held that where such acts of the state could reasonably be interpreted as a substantial interference or domination of private property, a *"pro tanto* taking" could be found, and compensation for such taking could be had by the private property owner by way of an action in mandamus in Common Pleas Court in the same manner as would be a mandamus action brought for a permanent taking.

Judge McCormac, concurring in *J. P. Sand & Gravel,* suggested that there may well be a right of action within the Court of Claims where the claim is one sounding in tort for damages to one's real property, favorably comparing *Smith* v. *Erie Rd. Co.* (1938), 134 Ohio St. 135. Judge McCormac held that in any event in the case before our court there was no reasonable claim for relief presented, in that the only method provided by law for a landowner to avoid an unreasonable delay in the state's appropriation of real property was by way of R. C. 5511.01, and that the landowner had failed to utilize such section. Such section provides that if an application is made by the property owner to the local governmental entity after a notice of the state's intention to appropriate is given, the

local governmental entity is required to notify the director of transportation who then must either act to appropriate the property within 120 days, or any extension thereof, or lift the restriction upon the use of the property.

In the case of *State, ex rel. Edmisten,* v. *Jackson, supra,* this court was confronted with an original action in mandamus brought by a property owner who claimed damage against the state alleged to have been occasioned by a change of grade during highway construction. In *Edmisten,* one panel of this court held that traditionally the only remedy available to a private party when the state took property was an original action in mandamus, there being no other remedy in the ordinary course of the law, the state not having been subject to suit without its consent (citing *State, ex rel. McKay,* v. *Kauer* [1951], 156 Ohio St. 347). The court, citing *Wilson* v. *Cincinnati* (1961), 172 Ohio St. 303, stated that the state had not previously consented to be sued. Continuing, this court held that the state not having previously consented to be sued, the last sentence in R. C. 2743.02(A) would not be applicable.

The court, in *Edmisten,* then concluded that the property owner's proper remedy against the Director of Transportation was in the Court of Claims, pursuant to R C. 2743.02(A), which remedy, continued the court, was an adequate remedy in the ordinary course of the law, precluding mandamus, citing *State, ex rel. Pressley, v. Indus. Comm.* (1967), 11 Ohio St. 2d 141.

As a corollary to the conclusion in *Edmisten* that the prior availability of mandamus did not constitute a consent by the state to be sued, we note the decision of this court in *State, ex rel. Ferguson,* v. *Shoemaker* (1975), 45 Ohio App. 2d 83, at page 88, where it is stated: "However, an action against a public officer to compel him to perform a public duty or to enjoin him from performing an act contrary to law is not an action against the state precluded by the doctrine of sovereign immunity"; citing *State, ex rel. Nichols,* v. *Gregory* (1935), 130 Ohio St. 165; *American Life & Accident Ins. Co.* v. *Jones* (1949), 152 Ohio St. 287; and *Life Ins. Co.* v. *Hess* (1926), 28 Ohio App. 107

(affirmed 116 Ohio St. 416). Also see *State, ex rel. Wilson,* v. *Preston* (1962), 173 Ohio St. 203.

In the case of *State, ex rel. Nicholson,* v. *Jackson, supra,* this court speaking through yet another panel, approved and adopted the holding of *Edmisten* in an appeal of a mandamus action that had been brought in the Common Pleas Court of Franklin County, where the property owner claimed damages to his property when the city of New Philadelphia announced its plans to prohibit parking in front of the complainant's property. In that case, in addition to finding that the property owner could bring his action in the Court of Claims, and that therefore there was a remedy in the normal course of the law, and that accordingly mandamus would not lie, this court held that even assuming that prohibiting parking would be an interference with access rights, here there had as yet been no ordinance passed by the municipality actually taking such rights.

It may be readily seen that our prior decisions on the subject have presented a degree of conflict and resulting confusion. Therefore, the need is apparent for clarification, hopefully to be found within this decision.

Prior to the limited waiver of sovereign immunity by way of the enactment of the Court of Claims Act, Ohio courts historically have granted relief to private property owners where there has been a "taking" of property. The appropriate action afforded the property owner has been by way of an original action in mandamus. Such an action has been held to be the proper one to be brought against a municipality which has taken private property, *Ryan* v. *Hoffman* (1875), 26 Ohio St. 109; *State, ex rel. Ballard,* v. *Harrison* (1909), 81 Ohio St. 98.

Also, as stated within 19A Ohio Jurisprudence 2d 599, Eminent Domain, Section 397: "Where the taking of property is by the state, the property owner's redress must be by mandamus to compel the appropriation of the property so taken." Citing *Wilson* v. *Cincinnati* (1961), 172 Ohio St. 303; *State, ex rel. McKay,* v. *Kauer* (1951), 156 Ohio St. 347; *State, ex rel. Wilson,* v. *Preston* (1962), 173 Ohio St. 203; and *Masheter* v. *Boehm* (1973), 34 Ohio App.

2d 43, reversed on other grounds, 37 Ohio St. 2d 68.

A "taking" by a governmental entity may be less than the entire fee of real property. There may be a taking where the government has by its action interfered with a leasehold interest, *State, ex rel. Wilson,* v. *Preston, supra*; where the governmental action deprives the owner access to his property, *State, ex rel. McKay,* v. *Kauer, supra*; or an encroachment on the land which results in a "*pro tanto* taking,*" such as in *Norwood* v. *Sheen* (1933), 126 Ohio St. 482, and *Masley* v. *Lorain* (1976), 48 Ohio St. 2d 334.

In the case of *Norwood* v. *Sheen,* the Supreme Court of Ohio defined what would constitute a "taking" in a constitutional sense in the first paragraph of the syllabus, as follows:

"Any direct encroachment upon land, which subjects it to a public use that excludes or restricts the dominion and control of the owner over it, is a taking of his property, for which he is guaranteed a right of compensation by Section 19 of the Bill of Rights. (*Lake Erie & Western Rd. Co.* v. *Commissioners of Hancock County,* 63 Ohio St. 23, approved and followed.)"

In the more recent case of *Masley* v. *Lorain,* where the court held that the flooding of plaintiff's land occasioned by the installation of a storm sewer by the city was a "taking," the court discussed its prior holdings on what constitutes a "taking," at page 336 of the decision, as follows:

"This court has held that 'any direct encroachment upon land, which subjects it to a public use that excludes or restricts the dominion and control of the owner over it, is a "taking" ' in the constitutional sense. *Lake Erie & Western Rd. Co.* v. *Commrs. of Hancock County* (1900), 63 Ohio St. 23, 57 N. E. 1009, paragraph three of the syllabus; *Norwood* v. *Sheen* (1933), 126 Ohio St. 482, 186 N. E. 102. This court has held further that under this principle, a muncipality, in creating a public improvement, may be liable for causing sewage (*Mansfield* v. *Balliett* [1902], 65 Ohio St. 451, 63 N. E. 86); percolating water (*Barberton* v. *Miksch* [1934], 128 Ohio St. 169, 190 N. E. 387); or surface water (*Lucas* v. *Carney* [1958], 167 Ohio St. 416, 149

N. E. 2d 238), to be cast upon the land of another, if in so doing the owner is deprived of any of the use and enjoyment of his property. * * *"

Thus, in many cases that may be cited, the courts have allowed an original action in mandamus against municipalities, as well as the state highway director, on the theory that there had been an appropriation or a "taking," when indeed the acts of the governmental entity, whether negligently or non-negligently, had occasioned what otherwise could be considered a trespass, encroachment, nuisance, or other tort against the land holdings of a private individual. So, in effect, the courts have for a number of years permitted actions against the state through its departmental directors by way of an action in mandamus seeking damages in appropriation, where in practicality the act of the state had been tantamount to a tortious act.

The appellant here reasonably argues that now that the state of Ohio has, in a limited manner, waived its sovereign immunity, why should not a rose be called a rose, and the law permit actions against the state in the Court of Claims where there has been a *"pro tanto"* or limited taking in the tortious sense, in the same manner that actions against the state should be permitted within the Court of Claims where there has been the commission of any other type of tort. This, continues the appellant, is in keeping with the legal principles that have permitted actions to be brought directly against municipalities for a tortious or *"pro tanto"* taking of property. Citing *Piqua* v. *Morris* (1918), 98 Ohio St. 42; *Barberton* v. *Miksch* (1934), 128 Ohio St. 169; and *Masley* v. *Lorain, supra.*

We hereby hold that it is the more appropriate, and better reasoned, conclusion to permit actions to be brought against the state in the Court of Claims where there has been a "taking" of private property. Further, we hold that such an action may be brought in such court whether the "taking" is either of the permanent, or of the tortious, or *"pro tanto"* type taking. In the instance of bringing such an action in the Court of Claims, the property owner would be considered to have voluntarily waived the right to a jury to assess his damages, as granted by Section 19,

Article I, of the Ohio Constitution, and by R. C. Chapter 163 and 5519.

Additionally, we hold that the property owner, who alleges that the state has taken his property, may, in the alternative, still bring an original action in mandamus in the courts having this original action jurisdiction. This alternative procedure would require the property owner to show the existence of the clear legal duty of the state official to act in the first instance and, if so shown, would permit the property owner to have the damages for the taking assessed by a jury in the appropriation proceeding in the Common Pleas Court, in accordance with the Constitution and the statutory enactments. We have concluded that mandamus should be available if sought by the property owner, in that an action in the Court of Claims seeking damages for a "taking" of real property would not avail the owner of an assessment of value by a jury and, therefore, would not, in this regard, afford a remedy in the ordinary course of the law.

Our pronouncements here of what this court now feels should be the controlling legal principles to be applied in these types of causes do no violence to our prior judgments in *J. P. Sand & Gravel, Edmisten,* or *Nicholson,* in that the final determinations in those cases rest upon the particular facts to be found in those cases.

Parenthetically, we feel it important to note that where the state has, by specific statute, such as R. C. 163.03, previously consented to be sued in civil actions where resulting damages to real property have been occasioned by the state, such sections appear to preclude bringing such actions in the Court of Claims.

Concluding, the assignment of error is hereby sustained, the judgment of the Court of Claims is hereby reversed, and this matter is remanded to such court for further proceedings according to this decision and in accordance with law.

*Judgment reversed.*

WHITESIDE and REILLY, JJ., concur.