996 F.2d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Donna ARDIRE and Philip Ardire, Plaintiffs-Appellants,
v.
Michael RUMP, John Maxey, Richard Lancashire, Jeffrey
Neverman, Westlake City Planning Commission, and
City of Westlake, Defendants-Appellees.
 No. 92-4204.
 United States Court of Appeals, Sixth Circuit.
 June 30, 1993.
 
 Before: MILBURN and NORRIS, Circuit Judges; and WISEMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs Philip Ardire and Donna Ardire, husband and wife, appeal from the dismissal without prejudice of their action filed pursuant to 42 U.S.C. § 1983 against the City of Westlake, Ohio, its planning commission, and four individual members of the commission challenging the denial of a property division on the ground that their constitutional claims are not ripe for a decision. On appeal, the issue is whether the district court erred in determining that none of the Ardires' constitutional claims are ripe for consideration. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 The Ardires are the owners of a piece of property located at 25808 Central Ridge Road in the City of Westlake, Cuyahoga County, Ohio. The parcel contains approximately 2.551 acres of land and has frontage on both Center Ridge Road and Newbury Drive. The parcel is rather long and narrow and one end of it intersects with a major street, Center Ridge Road. A smaller street, Newbury Drive, dead ends into the opposite end of the parcel.
 
 
 3
 The front part of the Ardires' property is zoned for multi-family use, and the back part is zoned for single-family dwellings. In 1985, the Ardires submitted an application to the Westlake Planning Commission requesting a split of the property into two separate parcels. The front parcel, Lot A, would contain 0.7543 acres of land having frontage on Center Ridge Road along with an existing two-family house. Lot A would be zoned for multi-family use. The Ardires had a pending contract to sell this portion of their lot subject to approval of the property split by the planning commission.
 
 
 4
 The back part of the Ardires' property, Lot B, would contain 1.7967 acres with frontage on Newbury Drive. It would be zoned for single-family use, and the Ardires planned to build a single-family home for their own use on Lot B.
 
 
 5
 The Westlake Planning Commission unanimously disapproved the requested property division on March 4, 1985. The Ardires, who were not present at the meeting of the planning commission, were represented by counsel who made a general introduction of their application. The director of planning for the commission then pointed out that on the original city plan from the 1960's it had been contemplated that Newbury Drive, which ended at the back of the Ardires' property, would be extended through the back end of their lot and then curve through an adjoining lot to meet another road, Williams Drive. The city director noted that he believed the city should have reserved the Ardires' lot for a critical street opening, but he was unable to find any record of such a reservation. The director then suggested that the planning commission pass a resolution that evening making such a reservation of the Ardires' property.
 
 
 6
 In addition, the commission also discussed the fact that if the Ardires carried through with their plans, the back portions of similar long lots on either side of their property would be landlocked and that the existing dead end street, Newbury Drive, exceeded the permissible length for a cul-de-sac. There was further discussion among the board members that if the property division was approved, the Ardires could request a building permit for the back part of their lot, forcing the city to decide within ninety days whether it wished to buy the property. However, if the division was disapproved, the Ardires would be unable to apply for a building permit because there was an existing two-family home on the undivided parcel.
 
 
 7
 As we stated earlier, the planning commission unanimously disapproved the requested property division. The minutes of the commission noted that the disapproval was based primarily on the fact that the property was set aside for a critical street opening. However, as noted above, no such reservation of the Ardires' property had been made.
 
 
 8
 The Westlake Planning Commission is the sole and exclusive agency which decides single property splits for the City of Westlake, Ohio. Under the relevant provisions of Westlake city ordinances, no further administrative action or review was required by the Westlake City Council for the denial of the single property split.
 
 
 9
 As provided for by Ohio Revised Code § 2506, the Ardires appealed the planning commission's decision to the Common Pleas Court of Cuyahoga County, Ohio, which affirmed the decision of the Westlake Planning Commission on March 14, 1991. A further appeal was taken to the Ohio Court of Appeals for the Eighth District, which reversed the decision of the lower court in favor of the planning commission on February 4, 1993, while this appeal was pending. Specifically, the state court of appeals found that the planning commission's denial of the single property split was arbitrary, unreasonable, and capricious and was not supported by the preponderance of reliable, probative, and substantial evidence. The state court of appeals further concluded that because the entire decision by the planning commission was based on hunches, it was an abuse of discretion. Apparently, the City of Westlake plans to appeal that ruling to the Supreme Court of Ohio. In addition, the Ardires filed an action for money damages in the Common Pleas Court of Cuyahaga County; however, they voluntarily dismissed this action without prejudice on January 13, 1987.
 
 B.
 
 10
 In 1988, the Ardires filed a complaint and amended complaint in the district court seeking monetary and injunctive relief under 42 U.S.C. § 1983. They alleged that the action of the Westlake Planning Commission constituted violations of equal protection, substantive and procedural due process, and a taking without just compensation in violation of the Fifth and Fourteenth Amendments of The Constitution of the United States. The Ardires' complaints also included pendent state law claims; namely, intentional and/or negligent state torts.
 
 
 11
 The complaint survived Westlake's motion to dismiss on statute of limitations grounds. However, the district court then sua sponte requested that the parties brief the issue of ripeness. After consideration of the briefs, the district court concluded that none of the Ardires' constitutional claims were ripe for review and dismissed them without prejudice on October 7, 1992. The Ardires' pendent state claims were also dismissed without prejudice. This timely appeal followed.
 
 II.
 
 12
 The district court's finding on the issue of ripeness is a question of law subject to de novo review. See Bannum, Inc. v. City of Louisville, Ky., 958 F.2d 1354, 1362 (6th Cir.1992).
 
 A.
 
 13
 In a case alleging a taking of property without just compensation, the Supreme Court has determined that two different elements must be satisfied to render the claim ripe for consideration in the federal courts. First, the challenged decision must be final, and second, the plaintiffs must have utilized state procedures for obtaining compensation. See Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985). In that case, which alleged only a taking claim, the Court found that neither requirement was satisfied because the plaintiff could have requested a variance from the zoning requirements and could have filed an action for inverse condemnation to seek compensation.
 
 
 14
 In this case, the plaintiffs have satisfied the first criteria for ripeness in that they had received a final decision from the planning commission on their requested property split. There was no way that the plaintiffs could seek a variance which would allow them to build a home on the back portion of their property and still satisfy the planning commission's desire to put a road through the same portion of their property. Relying on the Supreme Court's decision in MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 341 (1986), defendants assert that this claim is not ripe for review because the Ardires could have altered their request for a single property split; i.e., by varying the length of the cul-de-sac at the back of their lot in order to make it acceptable to the Westlake Planning Commission. However, this argument is misplaced as there was no way that the Ardires could have adjusted and resubmitted their plan in a form satisfactory to the commission. The Ardires wished to use the back portion of their lot to build a dwelling; however, the commission desired to keep the back portion of the lot in an unimproved state because of the possibility that a road might be built across the back portion of the lot.
 
 
 15
 Defendants also argue that the decision of the Westlake Planning Commission was not a final administrative decision because the Ardires did not apply for a building permit for the back portion of their lot. However, this argument ignores the fact that the Ardires could not apply for a building permit after their requested property split was denied because they were not permitted to have more than one existing house on the undivided parcel.
 
 
 16
 In order for the taking claim to be ripe under the second criteria for ripeness, the Ardires must also demonstrate that state remedies for compensation are inadequate. In order to do so, the remedies available must be used and the compensation denied. Silver v. Franklin Tp., Bd. of Zoning Appeals, 966 F.2d 1031, 1034-35 (6th Cir.1992). "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Williamson, 473 U.S. at 195. The case is not "ripe" because "the State's action is not 'complete' until the State fails to provide adequate compensation for the taking." Id.
 
 
 17
 The Supreme Court has made it clear that it is not the exhaustion of the review procedures for the final administrative decision itself that is required; it is exhaustion of the procedures for compensation that is required for "ripeness." See id. at 194 n. 13. Thus, the Ardires were not required to have exhausted the appeal under Ohio Rev.Code § 2506, which, as noted, was recently decided by the Ohio Court of Appeals for the Eighth District. Rather, Ohio law provides a procedure for obtaining compensation for a governmental taking; namely, an action in mandamus under Ohio Rev.Code § 2731 to force the city to commence eminent domain proceedings. See Silver, 966 F.2d 1031, 1034-35 (6th Cir.1992); Four Seasons Apartment v. City of Mayfield Heights, Ohio, 775 F.2d 150, 151-52 (6th Cir.1985); Akron-Selle Co. v. City of Akron, 359 N.E.2d 704, 705 (Ohio App.1974).
 
 
 18
 The Ohio courts historically have granted relief to private property owners where there has been a taking of private property. Kermetz v. Cook-Johnson Realty Corp., 376 N.E.2d 1357, 1361 (Ohio App.1977). The appropriate action afforded the property owner has been by way of an original action in mandamus, and such an action has been held to be the proper one to be brought against a municipality which has taken private property. Id. "Where the taking of property is by the state, the property owner's redress must be by mandamus to compel the appropriation of the property so taken." Id. (citing 19A Ohio Jurisprudence 2d 599, Eminent Domain, Section 397). Moreover, where the actions of the state or municipality could be interpreted as a substantial interference or domination of the private property, "a pro tanto" taking as opposed to an absolute or permanent taking, the action for mandamus lies in the same manner as a mandamus action brought for a permanent taking. Id. at 1359-60. In this case, it is undisputed that the Ardires have not pursued Ohio's just compensation remedy as they have not sought mandamus to compel the City to commence eminent domain proceedings, known in Ohio as appropriation proceedings.
 
 
 19
 Finally, the compensation remedy in Ohio is a two-step process. First, as noted above, the appropriate remedy is an original action in mandamus in the Common Pleas Court to compel state or municipal officials to begin an appropriation (eminent domain) proceeding, and the second step is the appropriation proceeding in the Common Pleas Court, where a jury assesses the value of the damages for the property taken. Kermetz, 376 N.E.2d at 1359. In their brief, the Ardires contrast the two-step process for just compensation available in Ohio with the single-step inverse condemnation action available in Tennessee. Williamson, 473 U.S. at 196. Under Tennessee law, a private property owner can obtain just compensation through an inverse condemnation proceeding, a single procedure, where the "taking" is the result of restrictive zoning regulations. Id. However, as noted above, the Ohio just compensation procedure is a two-step process, the mandamus action to compel an eminent domain proceeding and the appropriation proceeding to determine damages. The Ardires assert that if the doctrine of "ripeness" is applied, they as property owners in Ohio will have to fight two legal battles to obtain just compensation, thereby incurring more costs, expenses, and attorneys fees than would a private property owner in Tennessee. Consequently, the Ardires assert that applying the "ripeness" doctrine will have a "chilling effect" on the assertion of private property rights in Ohio. Reply brief, p. 12. However, the issue before the district court was whether the Ardires have exhausted Ohio's procedures for just compensation for the "taking" of private property, not the efficiency or cost effectiveness of Ohio's compensation procedures vis-a-vis the compensation procedures utilized by any other state or jurisdiction. Therefore, the district court did not err in concluding that plaintiff's claim of taking without just compensation is not "ripe" for review.
 
 B.
 
 20
 In the alternative, the Ardires argue that their procedural due process claim is a separate claim which is ripe for review, particularly with regard to the front portion of their property, which would have been sold pursuant to a conditional contract if their property split application had been approved. They rely on this court's decision in Nasierowski Brothers Investment Company v. City of Sterling Heights, 949 F.2d 890, 894-95 (6th Cir.1991), which held that the plaintiff's claim of the denial of procedural due process was ripe for review. However, Nasierowski is clearly distinguishable from this case because the plaintiff alleged only that he was deprived of procedural due process when he was not afforded a public hearing to challenge the zoning reclassification of his property, and he did not allege an unconstitutional "taking" of his property under the Fifth and Fourteenth Amendments. Id. at 893.
 
 
 21
 Moreover, this court distinguished the decision in Nasierowski in Bigelow v. Michigan Department of Natural Resources, 970 F.2d 154 (6th Cir.1992). Bigelow, like the present case, involved claims of the denial of due process and "taking" without just compensation. The court in Bigelow found that all of the plaintiffs' claims arose from a common nucleus of facts and were ancillary to the taking claim. Therefore, the claims were subject to the "ripeness" requirement. Specifically, in Bigelow we stated:
 
 
 22
 The circumstances in this case, however, are quite different from those in Nasierowski, and weigh heavily in favor of subjecting the plaintiffs' procedural due process claim to the same ripeness requirements as the other claims.
 
 
 23
 * * *
 
 
 24
 * * *
 
 
 25
 Until the state courts have ruled on the plaintiffs' inverse condemnation [just compensation] claim, this court cannot determine whether a taking has occurred, and thus cannot address the procedural due process claim with a full understanding of the relevant facts. Furthermore, addressing the plaintiffs' procedural due process claim at this stage of the proceedings would allow future plaintiffs effectively to circumvent the ripeness requirement for takings claims simply by attaching a procedural due process claim to their complaint.
 
 
 26
 Id. at 159-60.
 
 
 27
 Similarly, in this case, until the Ardires have utilized the available state procedures for obtaining just compensation, it is not possible to determine the economic impact of the alleged denial of procedural due process. See Williamson, 473 U.S. at 191. Accordingly, the district court did not err in finding that the procedural due process claim was not ripe for review.
 
 
 28
 Furthermore, plaintiffs' procedural due process claims may have been subject to dismissal on other grounds. If the Westlake Planning Commission's decision on the proposed property split was completely discretionary, then the Ardires had no protected interest that would state a procedural due process claim. See G.M. Engineers and Associates, Inc. v. West Bloomfield Tp., 922 F.2d 328, 331 (6th Cir.1990). The relevant portion of Westlake's planning and platting code indicated that the commission could disapprove a property division on the grounds that it would not be properly integrated with adjoining subdivisions or does not comply with the planning principles of the city. J.A. p. 111. This would appear to vest the planning commission with a good deal of discretion. Furthermore, in reversing the decision of the planning commission, the Ohio Court of Appeals for the Eighth Circuit concluded that the commission abused its discretion in denying plaintiff's application for a property split.
 
 
 29
 Conversely, if the planning commission lacks discretion and must grant the application for a simple property split under certain conditions, then the doctrine of Parratt v. Taylor, 451 U.S. 527 (1981), applies, and the plaintiffs must prove that state corrective procedures are inadequate in order to state a procedural due process claim. G.M. Engineers, 922 F.2d at 332; Four Seasons, 775 F.2d at 151-52. In this case, the Ardires have obtained judicial review of the planning commission's decision in the state court and at this point in time the commission's decision has been reversed. Thus, it would not appear that the state's corrective procedures are inadequate.
 
 C.
 
 30
 Finally, because we have concluded that the Ardires' constitutional federal claims are not "ripe" for review, the district court did not err in dismissing their pendent state law claims without prejudice. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725-27 (1966).
 
 III.
 
 31
 In summary, although the Ardires had obtained a final decision on their proposed property division, their constitutional claims were not ripe for review because they had not utilized state procedures for obtaining compensation. Because all of their constitutional claims were ancillary to their taking claim, the argument that the due process claim was separate and therefore ripe for consideration must fail. Finally, the Ardires' pendent state law claims were also subject to dismissal because none of their constitutional claims was "ripe" for review. Accordingly, the district court's dismissal of the Ardires' action without prejudice is AFFIRMED.
 
 
 
 *
 Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation