SMALLEY,

v.

**OHIO DEPARTMENT OF TRANSPORTATION, DISTRICT 1.**

Court of Claims of Ohio.

No. 2005–10756–AD.

Decided March 15, 2007.

BORCHERT, Deputy Clerk.

{¶ 1} Plaintiff, James A. Smalley, owns land adjacent to and abutting the U.S. Route 30/U.S. Route 23 interchange in Wyandot County. Plaintiff stated that he planted two acres of soybeans in his fields abutting the U.S. Route 30/U.S. Route 23 interchange and that the beans failed to mature during the growing season of 2005. Plaintiff attributed this crop failure to the act of defendant, the Department of Transportation ("DOT"), of installing high mast lighting along the roadway interchange in Wyandot County in December 2004. Plaintiff asserted that this newly installed roadway lighting caused two acres of his soybean crop he planted in May 2005 to fail and he consequently was forced to mow down the failed portion of his crop.

{¶ 2} Plaintiff contended that two acres of his crop failed as a direct result of artificial light from the newly installed roadway lights bleeding onto his fields abutting the roadway. Plaintiff estimated that two acres of planted soybeans should yield about 120 bushels of beans. Plaintiff determined that he lost about $6 per bushel, for a total loss of $720. Plaintiff has asserted that defendant should bear the responsibility for his crop failure. Consequently, plaintiff filed this complaint seeking to recover $720. The filing fee was paid.

{¶ 3} Without waiving any defense, defendant disputed plaintiff's estimate of damages. Defendant produced evidence establishing that the actual loss plaintiff suffered when his two acres of crops failed was $512.94. Defendant produced a document from the United State Department of Agriculture showing "the average cost-per-acre to grow soybeans in this region of Ohio, calculating both operating costs and allocated overhead," amounts to $256.47, relying on 2004 calculations. Therefore, defendant maintained that plaintiff's loss figure should be limited to $512.94, after reducing his operating costs/overhead expenses for two acres at 2004 prices. Plaintiff did not respond to defendant's argument. Plaintiff did not offer any supporting evidence to establish that he had sustained a loss of $720.

{¶ 4} Defendant acknowledged that in December 2004, it completed work on the installation of high mast lighting on U.S. Route 30 expressway in Wyandot County. Defendant also acknowledged that the lighting was installed along the roadway area adjacent to plaintiff's fields. Defendant stated that it had installed this lighting to "safely illuminate the expressway." Defendant further stated that

the installed lights "are the safest and most efficient lighting source given the traffic flow and lighting required at interchanges." While defendant did explain that this lighting installation was beneficial to the motoring public using the roadway, it was recorded that light did "occasionally bleed onto adjacent property [and] there is little doubt that defendant's light encroaches upon plaintiff's property." Defendant argued, however, that it cannot be held liable for any damage to plaintiff's bean crop caused by its light encroachment.

{¶ 5} Initially, defendant alleged that plaintiff's damage is not compensable due to the fact the injury claimed "falls under the doctrine of damnum absque injuria" (a loss for which there is no legal remedy). Defendant, citing *Smith v. Erie RR. Co.* (1938), 134 Ohio St. 135, 11 O.O. 571, 16 N.E.2d 310, contended that when a party "is uniquely affected in degree but not in kind by a highway improvement," any damage recovery is barred by the damnum absque injuria doctrine. The issue in *Smith* was the same as the issue in the instant case—whether or not defendant's act constituted a taking of plaintiff's property. "Under Section 19, Article I, of the Constitution which requires compensation to be made for private property taken for public use, any taking, whether it be physical or merely deprives the owner of an intangible interest appurtenant to the premises, entitles the owner to compensation." *Smith* at paragraph one of the syllabus. However, "[w]hen there is no taking altogether or pro tanto, damages consequential to the taking of other property in the neighborhood, or to the construction of the improvement, are not recoverable; under such circumstances, loss suffered by the owner is damnum absque injuria." *Smith* at paragraph two of the syllabus. Defendant has contended that its act of installing a roadway lighting system did not constitute a pro tanto taking of plaintiff's property and, consequently, any damage suffered is noncompensable. Defendant insisted that plaintiff's injury (impacted plant development) caused by the roadway lights was a harm suffered in degree by other landowners adjacent to a lighted highway. Therefore, defendant asserted that the suffered harm did not differ *in kind* from that sustained by the general public and renders the harm damnum absque injuria.

{¶ 6} Defendant offered *New York, Chicago & St. Louis RR. Co. v. Bucsi* (1934), 128 Ohio St. 134, 190 N.E. 562, for the proposition that a land owner cannot be compensated for a harm that differs in degree but not in kind from harm caused to the general public, because the landowner's legal status is categorized as damnum absque injuria. In *Bucsi*, a public improvement made the street on which plaintiffs lived a cul de sac, thus hindering ingress and egress to the property. The court determined that hindered access to a nonabutting-property owner is an injury of degree and not of kind. In the instant claim,

plaintiff owns abutting land affected by defendant's improvement and the action pursued does not involve hindered access to the property.

{¶ 7} Additionally, defendant argued that its act of installing the lights on U.S. Route 23/U.S. Route 30 was done in compliance with its obligation to make improvements upon highways for serving the public and promoting the public good and that none of plaintiff's property was taken by this public improvement. Defendant produced the following quote by the Ohio Supreme Court in the case of *State ex rel. Schiederer v. Preston* (1960), 170 Ohio St. 542, 544, 11 O.O.2d 369, 166 N.E.2d 748, quoting I Lewis on Eminent Domain (3d Ed.), 179 et seq., Section 120, to support this argument:

{¶ 8} "[A]s all streets are established primarily for the public use and general good, the right of the public is paramount to the right of the individual. And so the private rights of access, light and air are held and enjoyed subject to the paramount right of the public to use and improve the street for the purposes of a highway. And * * * it follows that, when such uses or improvements are made, no private right is interfered with and consequently no private property is taken."

{¶ 9} The facts of *State ex rel. Schiederer* involved a situation in which a public roadway improvement raised the grade of part of a street in front of the land abutting that street, thereby interfering with the abutting land owner's view over the particular street and affecting the harmony of the street with the abutting land. The Supreme Court, in *State ex rel. Schiederer,* concluded that no actionable taking of property occurred when a public highway improvement raised the grade of part of a street and "substantially interferes with the view that the owner of that land had over that street and with the relative harmony of the street with his land." Id., 170 Ohio St. at 548, 11 O.O.2d 369, 166 N.E.2d 748. The holding in the previously mentioned case has no bearing on the action before this court. "The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation." *State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.* (2001), 92 Ohio St.3d 529, 533, 751 N.E.2d 1032. "In order to establish a taking, a landowner must demonstrate a substantial or unreasonable interference with a property right. Such an interference may involve the actual physical taking of real property, or it may include the deprivation of an intangible interest in the premises." (Citations omitted.) *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 206, 667 N.E.2d 8.

{¶ 10} Alternatively, defendant argues that it "enjoys immunity for its decision to install roadway lighting." Presumedly, defendant also appears to be asserting that it should be immune from any harm caused by the lighting installation and use. Defendant explained that it was acting under statutory authority (see R.C. 5501.31 [1]) when installing the lighting along U.S. Route 30. Defendant explained

---

1. R.C. 5501.31 states:

that engineering judgment was utilized in making a decision to install the lighting along the roadway. Therefore, defendant expressed the position that it should be excused from liability for any damage caused from the exercise of this judgment. Defendant cited *Lunar v. Ohio Dept. of Transp.* (1989), 61 Ohio App.3d 143, 572 N.E.2d 208, for the proposition that deference is generally paid to the decisions of DOT engineers in respect to authorizing roadway improvement. The facts of *Lunar* involved an automobile collision and the issue of whether an engineering decision to not install a guardrail along the roadway concrete median exacerbated the effects of a crossover-type collision, thereby constituting negligent design. Conflicting engineering expert testimony was presented by both parties and the trial court concluded that DOT engineers acted reasonably in deciding not to install guardrails along a roadway concrete median. The holding in *Lunar* regarding DOT engineering decisions has no bearing on the question presented in the instant action. Despite defendant's assertion, this court concludes that DOT's reliance upon engineering judgment regarding roadway light installation does not protect it from liability.

{¶ 11} Defendant also presented an immunity argument based on the contention that the decision to install roadway lighting on the U.S. Route 30/U.S. Route 23 interchange was a policy decision involving a high degree of independent judgment and therefore it has immunity from the consequences of the decision. Defendant specifically relied on *Garland v. Ohio Dept. of Transp.* (1990), 48 Ohio St.3d 10, 548 N.E.2d 233, in promoting the immunity defense. In *Garland*, the Ohio Supreme Court held that DOT's decision to install a traffic light was discretionary and once the decision was made, DOT had a reasonable amount of time to implement the installation of the device without incurring liability in tort. Additionally, the court in *Garland*, quoting *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, wrote: " '[T]he state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion.' " However, once a decision has been implemented the state may be held liable for negligent conduct in the performance of carrying out the actual implementation of that decision. *Reynolds.* Defendant is not immune from liability for the negligent acts or omissions of its employees in engaging in the performance of their planned duties.

{¶ 12} Furthermore, defendant contended that if plaintiff's claim is actionable, he should nevertheless be barred from recovery based on his own voluntary act of

----

"The director may alter, widen, straighten, realign, relocate, establish, construct, reconstruct, improve, maintain, repair, and preserve any road or highway on the state highway system * * *."

planting crops in an area consistently illuminated by artificial light. Defendant suggested that plaintiff should have known that his 2005 bean crop planted near the roadway would not thrive due to the roadway lights installed by DOT in December 2004. Also, defendant asserted, even if the high mast highway lighting was deemed a nuisance, plaintiff could not recover since he planted his crop in the vicinity of this potential nuisance, invoking the defense of "coming to the nuisance." Defendant argues that plaintiff cannot prove that the high mast lighting constituted because he cannot prove negligence. *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 28 O.O. 369, 55 N.E.2d 724; *Allen Freight Lines, Inc. v. Consol. Rail Corp.* (1992), 64 Ohio St.3d 274, 595 N.E.2d 855. Defendant maintained that plaintiff offered no proof of negligence in this matter. Defendant asked the court to weigh the benefit that the high mast lighting gave to thousands of motorists against the harm the lights caused plaintiff in destroying two acres of his bean crop. Defendant essentially proposed that plaintiff should have to bear a financial burden for his crop loss in a situation where he was legally using his land for a specific valuable purpose and the harm caused was attributable to the acts of DOT.

{¶ 13} In *Taylor*, particular types of nuisance, both absolute and qualified, were defined. The court stated, "Summarized, then, absolute nuisance may be defined as a distinct civil wrong, arising or resulting from the invasion of a legally protected interest, and consisting of an unreasonable interference with the use and enjoyment of the property of another; the doing of anything, or the permitting of anything under one's control or direction to be done without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights; the unlawfully doing of anything, or the permitting of anything under one's control or direction to be done, which results in injury to another; or the collecting and keeping on one's premises of anything inherently dangerous or likely to do mischief, if it escapes, which, escaping, injures another in the enjoyment of his legal rights." *Taylor*, 143 Ohio St. at 440, 28 O.O. 369, 55 N.E.2d 724.

{¶ 14} Conversely, a qualified nuisance was distinguished from absolute nuisance as the following: "nuisance dependent upon negligence consists of anything lawfully but so negligently or carelessly done or permitted as to create a potential and unreasonable risk of harm which, in due course, results in injury to another." *Taylor*, 143 Ohio St. at 445, 28 O.O. 369, 55 N.E.2d 724. This court agrees with defendant's position that plaintiff has not shown that the installed lighting fit the applicable description of a nuisance, either absolute or qualified.

{¶ 15} After review of the plaintiff's complaint, defendant's investigation report, the response, and all materials in the claim, the court makes the following

determination. Evidence in the claim file suggests that the essence of plaintiff's claim is consistent with a taking action.

{¶ 16} Section 19, Article I, Ohio Constitution, states:

{¶ 17} "Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deductions for benefits to any property of the owner."

{¶ 18} Generally, claims arising out of the United States or Ohio Constitutions are not cognizable in this court. However, a specific exception exists where the issue involves an uncompensated taking of property in alleged violation of Section 19, Article I of the Ohio Constitution. *Kermetz v. Cook–Johnson Realty Corp.* (1977), 54 Ohio App.2d 220, 8 O.O.3d 375, 376 N.E.2d 1357; *Nacelle Land Mgt. Corp. v. Ohio Dept. of Natural Resources* (1989), 65 Ohio App.3d 481, 584 N.E.2d 790. Plaintiff may file an uncompensated-taking action in this court if the taking is instituted by DOT.

{¶ 19} The Fifth Amendment to the United States Constitution provides that private property shall not be taken for public use, without just compensation. In order for compensation to be required in a particular case, there must be a taking. The Ohio Supreme Court has defined "taking" in accordance with the United States Supreme Court's interpretation of that word. In *Smith v. Erie RR. Co.*, 134 Ohio St. at 142, 11 O.O. 571, 16 N.E.2d 310, the court held that "there need not be a physical taking of the property or even dispossession; any substantial interference with the elemental rights growing out of ownership of private property is considered a taking." Later, in *McKee v. Akron* (1964), 176 Ohio St. 282, 27 O.O.2d 197, 199 N.E.2d 592, the court gave a more negative definition of the term: something more than loss of market value or loss of comfortable enjoyment of the property is needed to constitute a taking. Specifically, the court stated that "governmental activity must physically displace a person from space in which he was entitled to exercise dominion consistent with the rights of ownership." Id. at 285, 27 O.O.2d 197, 199 N.E.2d 592. Thus, in order for a governmental activity to constitute a taking, there must be a substantial interference with the owner's property rights. Furthermore, according to *Smith*, the actual harm suffered by the plaintiff must differ "in kind" rather than "in degree" from the general public. Contrary to defendant's contention, the court determines that the harm suffered by plaintiff, the loss of a

portion of his bean crop, was indeed a harm suffered in kind. Therefore, the court concludes that the lights installed by DOT on the U.S. Route 30/U.S. Route 23 interchange resulted in an uncompensated taking of plaintiff's property, which is actionable and compensable. Defendant is liable to plaintiff for the crop loss less the operating costs/overhead expenses, $512.94, plus the $25 filing fee, which may be reimbursed as compensable damages pursuant to the holding in *Bailey v. Ohio Dept. of Rehab. & Corr.* (1990), 62 Ohio Misc.2d 19, 587 N.E.2d 990.