LUNAR et al., Appellants,

v.

OHIO DEPARTMENT OF TRANSPORTATION, Appellee.

[Cite as *Lunar v. Ohio Dept. of Transp.* (1989), 61 Ohio App.3d 143.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–973.

Decided March 23, 1989.

*Nurenberg, Plevin, Heller & McCarthy Co., L.P.A., Andrew P. Krembs, Harlan M. Gordon* and *Joel Levin,* for appellants.

*Anthony J. Celebrezze, Jr.,* Attorney General, *Debra J. DeSanto* and *Susan Sullivan,* for appellee.

*Sheryl King–Benford,* for city of Cleveland.

McCormac, Presiding Judge.

Plaintiffs-appellants, Douglas and Darlene Lunar, appeal from a judgment of the Ohio Court of Claims for defendant-appellee, Ohio Department of Transportation, and raise the following assignments of error:

"A. The Trial Court Erred In Finding In Favor Of Defendant Ohio Department Of Transportation On The Issue Of Whether The Ohio Department Of Transportation Was Negligent In 1962 In Its Design Of The Reconstruction Of The West Memorial Shoreway, Cleveland, Ohio, By Applying An Incorrect Test To Measure The Standard Of Care.

"B. The Trial Court Erred In Finding In Favor Of The Ohio Department Of Transportation On The Issue Of Whether, Between 1962 And March, 1983, The Ohio Department Of Transportation Breached Its Duty To Cooperate With The City Of Cleveland To Upgrade The West Memorial Shoreway Under The Provisions Of *Ohio Revised Code* Section 5501.11(D).

"C. The Trial Court Erred In Finding In Favor Of Defendant Ohio Department Of Transportation On The Issue Of Whether The Ohio Department Of Transportation Breached Its Duty To Upgrade The West Memorial Shoreway And/Or Its Assumed Duty To Do So Between March, 1983 And October 4, 1983.

"D. The Referee Committed Error In Suggesting That *Ohio Revised Code* Section 2305.131 Applied To The Case At Bar."

In April 1985, appellants filed suit against the city of Cleveland in the Cuyahoga County Court of Common Pleas, alleging that the city was negligent in its design, installation, repair, upgrading and maintenance of the West Memorial Shoreway in Cleveland, Ohio. On October 4, 1985, appellants instituted an identical action against the Ohio Department of Transportation ("ODOT") in the Ohio Court of Claims. Subsequently, the city of Cleveland filed a third-party claim for indemnification against ODOT in the Cuyahoga

County action. Cleveland's indemnification action was then removed to the Court of Claims and consolidated with appellants' pending suit against ODOT.

The trial court then ordered the determinative issue of ODOT's liability to be segregated and tried before a referee. On July 19, 1988, the referee issued his report concluding that appellants had failed to meet their burden of establishing ODOT's negligence in designing, installing, repairing, upgrading and maintaining the West Memorial Shoreway. On September 23, 1988, the Court of Claims adopted the referee's report and entered final judgment dismissing appellants' claims against ODOT as well as Cleveland's action for indemnification.

Appellants' actions were precipitated by an automobile collision involving Douglas Lunar and a second driver, not a party to this action. On October 4, 1983, Douglas P. Lunar was traveling westbound on the West Memorial Shoreway, a state roadway within Cleveland's municipal boundaries, when an eastbound vehicle crossed over the median strip separating the two lanes of travel and struck his vehicle head-on. Appellants' contentions center on the fact that there was no guardrail erected upon the concrete median at the location of the collision.

In 1962, ODOT reconstructed the West Memorial Shoreway in order to add an additional westbound lane of travel. In order to accommodate the additional lane, the median was narrowed. At the location of the accident, a transitional ramp area which leads from a limited access highway to city streets, the median was reduced to two feet in width and no guardrails were installed. The referee concluded that at the time of reconstruction there were no generally accepted standards in existence for the use or construction of guardrails.

Appellants' first assignment of error is that the trial court erred by applying an improper measure to determine the duty of care owed by appellee.

In order for appellants to prevail under a theory of negligence, they must establish that appellee owed them a duty of care, that appellee breached that duty, and that appellants suffered damages as a proximate result thereof. See *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. The issue presented herein is what standards should be applied to measure appellee's standard of care.

ODOT's engineers, when undertaking and constructing a highway project, must adhere to current written standards in order to fulfill their duty of care. *Lopez v. Ohio Dept. of Transp.* (1987), 37 Ohio App.3d 69, 523 N.E.2d 891. However, there were no standards applicable to guardrail construction when the West Memorial Shoreway was reconstructed. Thus,

the liability of ODOT must be determined in accordance with the same rules of law applicable to suits between private parties. R.C. 2743.02; *Strunk v. Ohio Dept. of Transp.* (Sept. 27, 1984), Franklin App. No. 84AP–114, unreported, 1984 WL 5920.

The Restatement of Torts provides that " * * * the care which the actor is required to exercise to avoid being negligent in the doing of the act is that which a reasonable man in his position, with his information and competence, would recognize as necessary to prevent the act from creating an unreasonable risk of harm to another." Restatement of the Law 2d, Torts (1965) 68, Section 298. See 70 Ohio Jurisprudence 3d (1986) 62, Negligence, Section 19. Comment *b* to the above-cited Restatement section recognizes that due care necessitates a balancing between the utility of the act and magnitude of the risk involved. In light of the foregoing, the proper standard should be that of a reasonable engineer using accepted practices at the time of the reconstruction.

At trial, appellants offered expert testimony to the effect that good engineering practice required the inclusion of guardrails in the area in question. However, aside from conclusionary statements, the bulk of the expert testimony concerned developments in the field of highway construction which evolved after the West Memorial Shoreway upgrading took place. Appellee, on the other hand, introduced evidence tending to show that in 1962 good engineering practices recognized an inherent risk associated with guardrails. Gerald Justin, an ODOT design engineer, testified that at the time of the reconstruction engineers held a belief that traffic tended to shy away from guardrails, thereby reducing effective lane width. He also testified that, once hit, guardrails bent and extended into the oncoming lane of traffic creating a risk in and of themselves. Evidence further showed that the location of the collision was a transitional area where a limited access highway turned into city streets, and that it was reasonable to expect traffic would slow down when confronted with this condition.

Appellants' expert concluded that the drivers would be at a higher risk of cross-over accidents in this transition area because of the frequency of lane changes. Appellee countered with evidence that there was signage far in advance alerting drivers of the situation, thereby facilitating lane changes prior to entering the transitional area. Furthermore, the area in question was posted with a thirty-five-mile-per-hour discretionary speed restriction.

From this conflicting evidence, reasonable minds could conclude that ODOT engineers acted in a reasonable manner and that they did weigh the utility of additional guardrails against the risk of their inclusion. When a judgment of the trial court is supported by some competent, credible evidence going to all

the essential elements of the case, it will not be disturbed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

Appellants contend that the referee did not apply a reasonable engineering standard but added a further gloss to the effect that the engineers' conduct must be viewed in light of reasonably prudent drivers abiding by the law. While there is a remark to that effect in the referee's report, appellants have cited it out of context and it was not prejudicial. There was some competent evidence to support the trial court's conclusion based upon the proper standard.

Appellants' first assignment of error is overruled.

Appellants next contend that the trial court erred by concluding that, between 1962 and March 1983, appellee did not breach its duty to cooperate with the city of Cleveland. Appellants argue that R.C. 5501.11(D) places a mandatory duty upon the Director of Transportation to implement improvements on a state highway once the city involved makes a reasonable request for improvements. Further, they argue that, because R.C. 5501.31 places the duty to maintain state highways passing through cities on the municipality, then the city must be the only party who can prioritize the scheduling of improvements.

Appellants predicate their argument on the fact that Cleveland had repeatedly requested ODOT to upgrade the highway and that R.C. 5501.11(D) requires ODOT to cooperate with municipal corporations in the construction, reconstruction, maintenance, repair, and improvement of public roads and bridges.

However, R.C. 5501.11 should be read *in pari materia* with R.C. 5511.01 and 5501.31.

R.C. 5511.01 provides, in pertinent part:

"No duty of constructing, reconstructing, maintaining, and repairing such state highways within municipal corporations shall attach to or rest upon the director; but he may enter upon such state highways within any municipal corporation and construct, reconstruct, widen, improve, maintain, and repair the same provided the municipal corporation first consents thereto by resolution of its legislative authority * * *."

R.C. 5501.31 provides:

"The director of transportation shall have general supervision of all roads comprising the state highways system. He may alter, widen, straighten, realign, relocate, establish, construct, reconstruct, improve, maintain, repair, and preserve any road or highway on the state highway system, and, in

connection therewith, relocate, alter, widen, deepen, clean out, or straighten the channel of any watercourse as he deems necessary, and purchase or appropriate property for the disposal of surplus materials or borrow pits, and, where an established road has been relocated, establish, construct, and maintain such connecting roads between the old and new location as will provide reasonable access thereto.

"* * *

"Except in the case of maintaining, repairing, or centerline painting of state highways within villages, which shall be mandatory as required by section 5521.01 of the Revised Code, no duty of constructing, reconstructing, widening, resurfacing, maintaining, or repairing state highways within municipal corporations, or the bridges and culverts thereon, shall attach to or rest upon the director, but he may construct, reconstruct, widen, resurface, maintain, and repair the same with or without the co-operation of any municipal corporation, or with or without the co-operation of boards of county commissioners upon each municipal corporation consenting thereto."

It is apparent when these statutes are read together that R.C. 5501.11(D) merely authorizes participation, but does not mandate it, in light of the statement of "no duty" of R.C. 5511.01 and 5501.31.

R.C. Chapter 5521, entitled "Municipal and County Cooperation," specifically provides for improvements of state highways within municipal corporations. In pertinent part, R.C. 5521.01 states:

"The director of transportation, upon the request by and the approval of the legislative authority of a village, shall maintain, repair, and center line paint, or may establish, construct, reconstruct, improve, or widen any section of a state highway within the limits of a village. The director may establish, construct, reconstruct, improve, widen, maintain, or repair any section of state highway within the limits of a city, including the elimination of railway grade crossings, and pay the entire or any part of the cost and expense thereof from state funds, but in all cases he shall first obtain the consent of the legislative authority of such municipal corporation * * *."

The legislature, by enacting R.C. 5521.01, promulgated a detailed procedure for the improvement of state highways within municipalities. As to construction, reconstruction, or improvement, the director is not mandated to proceed, but may do so. Thus, there was no breach of the "duty" to cooperate.

■ Appellants further attempt to distinguish *Bowman v. Ohio Dept. of Transp.* (Aug. 30, 1984), Franklin App. No. 83AP–516, unreported, 1984 WL 58782, from the case at bar. In *Bowman,* we held that the state does not have the duty to upgrade a guardrail as technology develops. *Bowman* is

applicable to the present case in that ODOT was under no duty after 1962 to implement state of the art cross-over barricades.

Appellants' second assignment of error is overruled.

■ In the third assignment of error, appellants contend that ODOT assumed a duty to upgrade the West Memorial Shoreway by signing an agreement with Cleveland in March 1983, and that ODOT subsequently breached that duty by failing to begin construction immediately.

Appellants cite a settlement agreement entered into between ODOT and Cleveland in March 1983, whereby ODOT agreed to do safety upgrading on the West Memorial Shoreway. Appellants then conclude that, because construction had not commenced by October 4, 1983, the date of his collision, ODOT was negligent by failing to act within a reasonable time. However, the ordinance authorizing the director to commence with construction was not passed until June 14, 1983. When the time necessary to finalize construction plans, advertise and award bids, and to allow preparatory time for contractors is added, it is reasonable to conclude that construction of the West Memorial Shoreway project could not have begun until late in 1983. There was no testimony that the project, or the pertinent part of the project, was unreasonably delayed.

Appellants' third assignment of error is overruled.

■ Appellants' fourth assignment of error states that the referee committed error by suggesting that R.C. 2305.131 might provide an affirmative defense.

The report of the referee stated: "Although neither ODOT nor the city of Cleveland raised the issue * * * R.C. 2305.131 *may* be applicable as an affirmative defense * * *." (Emphasis added.) This language itself negates R.C. 2305.11 as the basis for the court's holding. Even if the cited provision were an affirmative defense, it was waived when ODOT failed to include it in its pleadings.

In order for an assigned error to warrant reversal, appellants must show that the error was prejudicial. App.R. 12. The referee's language was dicta and appellants have failed to show that it worked to their prejudice.

Appellants' fourth assignment of error is overruled.

Appellants' assignments of error are overruled, and the judgment of the Ohio Court of Claims is affirmed.

*Judgment affirmed.*

REILLY and BOWMAN, JJ., concur.