**NEWELL, Plaintiff,**

v.

**OHIO DEPARTMENT OF TRANSPORTATION, Defendant.**

Court of Claims of Ohio.

No. 2005–11264–AD.

Decided March 6, 2007.

Robert Logan Beeler, for plaintiff.

Thomas P. Pannett, for defendant.

---

DANIEL R. BORCHERT, Deputy Clerk.

{¶ 1} Plaintiff, Ronald L. Newell, is a farmer who owns farm land and plants crops on this land adjacent to and abutting U.S. Route 23 in Wyandot County. Plaintiff stated that new lights installed along U.S. Route 23 in Upper Sandusky

by defendant, Department of Transportation ("DOT"), affected the maturing of the bean crop planted in fields adjacent to the roadway. Plaintiff explained that the bean crop he had planted in the rest of his field was ready to harvest by October 4, 2005. However, plaintiff observed that the beans planted in the two fields adjacent to the roadway lights "were soft and unable to harvest due to not being mature."

{¶ 2} Plaintiff has contended that the light installation along U.S. Route 23 directly resulted in his bean crop's inability to mature. Plaintiff related that the two fields affected by the roadway lighting averaged 57 bushels of beans per acre, and the affected acreage amounted to approximately 7.18. Plaintiff calculated the price of a bushel of beans based on November 18, 2005 prices as $5.40 per bushel. Plaintiff estimated that he had lost a total bean yield of $2,210 caused by the failure of the bean crop to mature. Plaintiff maintained that DOT should bear responsibility for the loss of the bean crop. Consequently, plaintiff filed this complaint seeking to recover the estimated lost yield from 7.18 acres of beans, plus the $25 filing fee. The filing fee was paid.

{¶ 3} Plaintiff submitted a written statement from Joe Lininger, an agronomist who is employed by an entity identified as The Farmers Commission Company. In his undated statement, Lininger noted that he had conducted measurements and had calculated that the total affected bean crop was located on 7.18 acres. Lininger concluded, "The soybeans are affected by highway lights and will not mature until a frost." Lininger pointed out that crop yields on plaintiff's land would be affected, but he was uncertain as to the extent that the yield would be diminished.

{¶ 4} Defendant acknowledged that DOT in December 2004 completed work on the installation of high mast lighting on U.S. Route 23 in Wyandot County. Defendant also acknowledged that the described high mast lighting was installed along the roadway area adjacent to plaintiff's fields. Defendant stated that DOT had installed this lighting to "safely illuminate the expressway." Defendant further stated that the installed lights "are the safest and most efficient lighting source given the traffic flow and lighting required at interchanges." While defendant did explain that this lighting installation was beneficial to the motoring public using the roadway, light did "occasionally bleed onto adjacent property [and] there is little doubt that defendant's light encroaches upon plaintiff's property." Defendant, however argued that DOT cannot be held liable for any damage to plaintiff's bean crop caused by any light encroachment.

{¶ 5} Initially, defendant alleged that plaintiff's damage to a particular part of his bean crop is not compensable because the injury claimed "falls under the doctrine of damnum absque injuria," or "damage without wrongful act." Garner, A Dictionary of Modern Legal Usage (1995) 244. Defendant, citing

*Smith v. Erie RR. Co.* (1938), 134 Ohio St. 135, 145, 11 O.O. 571, 16 N.E.2d 310, contended that when a party "is uniquely affected in degree but not in kind by a highway improvement," any damage claim recovery is barred by the damnum absque injuria doctrine. The issue in *Smith* is the same as in the instant claim: whether or not defendant's act constituted a taking of plaintiff's property. "Under Section 19, Article I, of the Constitution which requires compensation to be made for private property taken for public use, any taking, whether it be physical or merely deprives the owner of an intangible interest appurtenant to the premises entitles the owner to compensation." *Smith,* paragraph one of the syllabus. However, "[w]hen there is no taking altogether or pro tanto, damages consequential to the taking of other property in the neighborhood, or to the construction of the improvement, are not recoverable; under such circumstances, loss suffered by the owner is damnum absque injuria." *Smith,* paragraph two of the syllabus. Defendant contends that the act of DOT of installing a roadway lighting system did not constitute a pro tanto taking of plaintiff's property and consequently, any damage suffered is noncompensable. Defendant insists that plaintiff's injury ("impacted plant development") from the roadway lights was a harm suffered in some degree by other landowners adjacent to a lighted highway. Therefore, defendant asserts that the suffered harm did not differ "in kind" from that sustained by the general public and renders the harm damnum absque injuria.

{¶ 6} Defendant offers *New York, Chicago & St. Louis RR. Co. v. Bucsi* (1934), 128 Ohio St. 134, 190 N.E. 562, for the proposition that a land owner cannot be compensated for a harm that differs in degree, but not in kind, from that of the general public because the landowner's legal status is categorized as damnum absque injuria. In *Bucsi,* a public improvement rendered the street on which plaintiffs lived a cul de sac, thus hindering their ingress and egress. The court determined that hindered access to a nonabutting property owner is an injury of degree and not of kind. In the instant claim, plaintiff owns abutting land affected by defendant's improvement, and the action pursued does not involve hindered access to the property.

{¶ 7} Additionally, defendant argued that the act of installing the lights on U.S. Route 23 was done in compliance with DOT's obligation to make improvements upon highways for serving the public and promoting the public good and consequently, none of plaintiff's property was taken by this public improvement:

{¶ 8} " '[A]s all streets are established primarily for the public use and general good, the right of the public is paramount to the right of the individual. And so the private rights of access, light and air are held and enjoyed subject to the paramount right of the public to use and improve the street for the purposes of a highway. And * * * it follows that, when such uses or improvements are made,

no private right is interfered with and consequently no private property is taken.'" *State ex rel. Schiederer v. Preston* (1960), 170 Ohio St. 542, 544, 11 O.O.2d 369, 166 N.E.2d 748, quoting 1 Lewis on Eminent Domain (3d.Ed.) 179, Section 120.

■■ {¶ 9} *State ex rel. Schiederer* involved a public roadway improvement that raised the grade of part of a street in front of the land abutting that street, thereby interfering with the abutting landowner's view over the particular street and affecting the harmony of the street with the abutting land. The Supreme Court in *State ex rel. Schiederer*, 170 Ohio St. at 548, 11 O.O.2d 369, 166 N.E.2d 748, concluded that no actionable taking of property occurred when a public highway improvement raised the grade of part of a street and "substantially interferes with the view that the owner of that land had over that street and with the relative harmony of the street with his land." The holding in the previously mentioned case has no bearing on the action before this court. "The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation." *State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.* (2001), 92 Ohio St.3d 529, 533, 751 N.E.2d 1032. "In order to establish a taking a landowner must demonstrate a substantial or unreasonable interference with a property right * * *. Such an interference may involve the actual physical taking of real property, or it may include the deprivation of an intangible interest in the premises." *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 206, 667 N.E.2d 8.

■ {¶ 10} Alternatively, defendant states that DOT "enjoys immunity for its decision to install roadway lighting." Presumably, defendant also appears to be asserting that DOT should be immune from any harm caused by the lighting installation and use. Defendant explained that DOT was acting under statutory authority (See R.C. 5501.31 [1]) when installing the lighting along U.S. Route 23. Defendant explains that engineering judgment was used in making a decision to install the lighting along the roadway. Therefore, defendant claims that DOT should be excused from liability for any damage caused by the exercise of this judgment. Defendant cites *Lunar v. Ohio Dept. of Transp.* (1989), 61 Ohio App.3d 143, 572 N.E.2d 208, for the proposition that deference is generally paid to the decisions of DOT engineers in authorizing roadway improvement. *Lunar* involved an automobile collision, and the issue was whether an engineering decision to not install a guardrail along the roadway's concrete median exacerbat-

---

1. {¶ a} R.C. 5501.31 states:

{¶ b} "The director may alter, widen, straighten, realign, relocate, establish, construct, reconstruct, improve, maintain, repair, and preserve any road or highway on the state highway system * * *."

ed the effects of a crossover-type collision, thereby constituting negligent design. Conflicting engineering expert testimony was presented by both parties, and the trial court concluded that DOT engineers had acted reasonably in deciding not to install guardrails along a roadway's concrete median. The holding in *Lunar* regarding DOT engineering decisions has no bearing on the question presented in the instant action. Despite defendant's assertion, this court concludes that DOT's reliance upon engineering judgment regarding roadway light installation does not protect DOT from liability.

{¶ 11} Defendant also claims immunity because the decision to install roadway lighting on U.S. Route 23 was a policy decision involving a high degree of independent judgment, and therefore DOT has immunity from the consequences of this decision. Defendant specifically relies on *Garland v. Ohio Dept. of Transp.* (1990), 48 Ohio St.3d 10, 548 N.E.2d 233, in support. In *Garland,* the Ohio Supreme Court held that DOT's decision to install a traffic light was discretionary, and once the decision was made, DOT had a reasonable time to implement the installation of the device without incurring liability in tort. Additionally, the court wrote: " '[T]he state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion.' " Id. at 11, 548 N.E.2d 233, quoting *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, paragraph one of the syllabus. However, once a decision has been implemented, the state may be held liable for negligent conduct in the actual implementation of that decision. Id. Defendant is not immune from liability for the negligent acts or omissions of DOT employees in performing their planned duties.

{¶ 12} Furthermore, defendant contends that if plaintiff's claim is actionable, he should nevertheless be barred from recovery based on his own voluntary act of planting crops in an area consistently illuminated by artificial light. Defendant suggested that plaintiff should have known his 2005 bean crop planted near the roadway would not thrive due to the roadway lights installed by DOT in December 2004. Also, defendant asserted that even if the high mast highway lighting was deemed a nuisance, plaintiff could not recover because he had planted his crop in the vicinity of this potential nuisance, an act that would invoke the defense of "coming to the nuisance." Defendant related that plaintiff cannot prove the high mast lighting constitutes a nuisance condition because a qualified nuisance requires proof of negligence. *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 28 O.O. 369, 55 N.E.2d 724; *Allen Freight Lines, Inc. v. Consol. Rail Corp.* (1992), 64 Ohio St.3d 274, 595 N.E.2d 855. Defendant maintains that plaintiff offered no proof of negligence in this matter. Defendant argues that the court weigh the benefit that high mast lighting gives to thousands of motorists against

the harm the lights causes plaintiff in destroying approximately seven acres of his bean crop. Defendant essentially proposes that plaintiff should have to bear a financial burden for his crop loss when he is legally using his land for a specific valuable purpose, and the harm caused is attributable to the acts of DOT.

{¶ 13} In *Taylor*, particular types of nuisance, both absolute and qualified, were defined. The court stated, "Summarized, then, absolute nuisance may be defined as a distinct civil wrong, arising or resulting from the invasion of a legally protected interest, and consisting of an unreasonable interference with the use and enjoyment of the property of another; the doing of anything, or the permitting of anything under one's control or direction to be done without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights; the unlawfully doing of anything, or the permitting of anything under one's control or direction to be done, which results in injury to another; or the collecting and keeping on one's premises of anything inherently dangerous or likely to do mischief, if it escapes, which, escaping, injures another in the enjoyment of his legal rights." *Taylor*, 143 Ohio St. at 440, 28 O.O. 369, 55 N.E.2d 724.

{¶ 14} Conversely, a qualified nuisance was distinguished from absolute nuisance as follows: "[N]uisance dependent upon negligence consists of anything lawfully but so negligently or carelessly done or permitted as to create a potential and unreasonable risk of harm which, in due course, results in injury to another." Id. at 445, 28 O.O. 369, 55 N.E.2d 724. This court agrees with defendant's position that plaintiff has not shown that the DOT-installed lighting fit the applicable description of a nuisance, either absolute or qualified.

{¶ 15} After review of the plaintiff's complaint, defendant's investigation report, the response, and all materials in the claim, the court makes the following determination. Evidence in the claim file suggests that the essence of plaintiff's claim is consistent with a taking action.

{¶ 16} Section 19, Article I, Ohio Constitution, states:

{¶ 17} "Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deductions for benefits to any property of the owner."

{¶ 18} Generally, claims arising out of the United States or Ohio Constitutions are not cognizable in this court. However, a specific exception exists when

the issue involves an uncompensated taking of property in alleged violation of Section 19, Article I of the Ohio Constitution. *Kermetz v. Cook–Johnson Realty Corp.* (1977), 54 Ohio App.2d 220, 8 O.O.3d 375, 376 N.E.2d 1357; *Nacelle Land Mgt. Corp. v. Ohio Dept. of Natural Resources* (1989), 65 Ohio App.3d 481, 584 N.E.2d 790. Plaintiff may file an uncompensated-taking action in this court if the taking is instituted by DOT.

{¶ 19} The Fifth Amendment to the United States Constitution provides, "[N]or shall private property be taken for public use, without just compensation." For compensation to be required in a particular case, there must be a taking. The Ohio Supreme Court has defined "taking" in accordance with the United States Supreme Court's interpretation of that word. In *Smith v. Erie RR. Co.*, 134 Ohio St. at 142, 11 O.O. 571, 16 N.E.2d 310, the court held, "[T]here need not be a physical taking of the property or even dispossession; any substantial interference with the elemental rights growing out of ownership of private property is considered a taking." Later, in *McKee v. Akron* (1964), 176 Ohio St. 282, 27 O.O.2d 197, 199 N.E.2d 592, the court gave more of a negative definition of the term; something more than loss of market value or loss of comfortable enjoyment of the property is needed to constitute a taking. Specifically, the court stated, "[G]overnmental activity must physically displace a person from space in which he was entitled to exercise dominion consistent with the rights of ownership * * *." Id. at 285, 27 O.O.2d 197, 199 N.E.2d 592. Thus, in order for a governmental activity to constitute a "taking," there must be a substantial interference with the owner's property rights. Furthermore, according to *Smith,* the actual harm suffered by the plaintiff must differ "in kind" rather than "in degree" from the general public. The court in the instant claim determines that the harm suffered by plaintiff, the loss of a portion of his bean crop, was indeed a harm suffered in kind. Therefore, the court concludes that the lights installed by DOT on U.S. Route 23 resulted in an uncompensated taking of plaintiff's property that is actionable and compensable. Defendant is liable to plaintiff for the damages claimed, plus the $25 filing fee, which may be reimbursed as compensable damages pursuant to the holding in *Bailey v. Ohio Dept. of Rehab. & Corr.* (1990), 62 Ohio Misc.2d 19, 587 N.E.2d 990.

{¶ 20} Having considered all the evidence in the claim file and, for the reasons set forth in the memorandum decision filed concurrently herewith, judgment is rendered in favor of plaintiff in the amount of $2,235, which includes the filing fee. Court costs are assessed against defendant. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.