OPINION
{¶ 1} Plaintiff-appellant, Johannes J. Christian, appeals from a judgment of the Court of Claims of Ohio that determined defendant-appellee, the Ohio Department of Transportation ("ODOT"), was not negligent in failing to install protective fencing on a freeway overpass bridge in Clark County. Because the court's judgment is not contrary to law or against the manifest weight of the evidence, we affirm. *Page 2 
I. Court of Claims Proceedings {¶ 2} On July 9, 2001, a juvenile threw a large rock from the Plattsburg Road bridge that spans Interstate 70 ("I-70") east of Springfield in Clark County. Plaintiff received serious and permanent injuries when the rock crashed through the windshield of his automobile as his vehicle was about to pass under the bridge. At the time of the incident, the sides of the Plattsburg Road bridge consisted of cement parapets; no protective fencing was in place.
 {¶ 3} Plaintiff filed an action in the Court of Claims of Ohio alleging (1) ODOT was negligent in failing to install vandal protective fencing on the Plattsburg Road bridge within a reasonable time after it made a policy decision in 1985 to retrofit Ohio's existing freeway bridges with such fencing, and (2) ODOT's failure to install protective fencing on the bridge prior to plaintiff's July 2001 incident was a direct and proximate cause of his injuries. ODOT denied it was liable for plaintiff's injuries, contending it had no duty to install protective fencing on the Plattsburg Road bridge because the bridge did not satisfy the criteria established in ODOT's protective fencing policy. After bifurcating the issues of liability and damages, the Court of Claims conducted a bench trial on the issue of ODOT's liability.
 {¶ 4} According to the evidence, ODOT adopted Policy 1005.1 (the "fencing policy") in 1985 to address retrofitting Ohio's existing bridges with protective fencing. The fencing policy was incorporated into ODOT's Bridge Design Manual in 1993, and the substantive portions relevant here have remained essentially unchanged through 2001. Since its inception, ODOT's fencing policy has had two primary purposes: (1) "to provide for the security of pedestrians" and (2) "to discourage the throwing or dropping of objects *Page 3 
from bridges onto lower roadways[.]" When it was adopted, ODOT's fencing policy noted that "a falling-object problem could occur at any bridge accessible to pedestrians" but, due to economic considerations, the need for protective fencing on an existing bridge had to be demonstrated before the bridge would be retrofitted with such fencing.
 {¶ 5} To determine whether a bridge needed protective fencing, ODOT's bridge designers were required to evaluate a bridge structure and numerically rate the bridge according to ten "justification items," or criteria, listed in a table within the policy. Each of the ten justification items was assigned a point value, and they collectively totaled 38 possible points. The higher the number of total points in a bridge's score, the greater the indicated need for protective fencing on the bridge.
 {¶ 6} Pursuant to ODOT's fencing policy, an existing bridge qualified for protective fencing if the bridge scored a total of 10 or more points under the justification items listed in the policy; other rationale also could be considered on a case-by-case basis. In 1996, the Supreme Court of Ohio held that installation of protective fencing was "mandatory" for all existing bridges in Ohio that scored 10 or more total points according to the fencing policy's established criteria, unless "adequate justification for not doing so [could] be furnished." Semadeni v. OhioDept. of Transp. (1996), 75 Ohio St.3d 128, 132.
 {¶ 7} The evidence at trial showed that, as a result of funding concerns, ODOT first evaluated existing bridges in Ohio that had sidewalks, completing those bridge evaluations in 1987. The Plattsburg Road bridge, although always subject to ODOT's fencing policy, was not among the initial group of bridges evaluated because it did not have a "sidewalk" as defined within ODOT's fencing policy. *Page 4 
 {¶ 8} ODOT's policy and procedures also required that all freeway bridges be evaluated when they were reconstructed or rehabilitated. The Plattsburg Road bridge undisputedly underwent major repairs and renovation in 1994. As a result of ODOT's policy and procedures then in place, ODOT was required to evaluate the bridge for protective fencing during the 1994 reconstruction project. If the bridge scored a total of 10 or more points under the fencing policy's established criteria, ODOT was required to retrofit the bridge with protective fencing during the project.
 {¶ 9} The only witnesses who testified at trial in this case were two ODOT engineers. The first, Sean Meddles, was a bridge standards engineer in ODOT's Office of Structural Engineering whose duties included oversight of bridge policy documents and construction specifications for bridge fencing. The second was Bradley Lightle, a bridge designer and the assessment engineer for ODOT District Seven, where the Plattsburg Road bridge is located. Meddles testified an ODOT engineer evaluates a bridge's need for protective fencing based upon the fencing policy's criteria and the engineer's judgment. Meddles and Lightle agreed that ODOT's fencing policy is a guideline and that ODOT's engineers use their discretion and engineering judgment in interpreting and applying its criteria.
 {¶ 10} Lightle acknowledged no physical documents verified that the Plattsburg Road bridge ever was evaluated for protective fencing prior to July 2001. Lightle, however, stated an ODOT bridge design consultant evaluated the bridge for fencing before its 1994 reconstruction project, and the consultant concluded no fencing was required on the bridge. Meddles testified that because the evaluator concluded the bridge did not meet the criteria for protective fencing installation, Meddles would not expect a *Page 5 
fencing evaluation document to be retained for the bridge. In explaining why he would not expect a document recording the evaluation, Meddles stated such a document is produced, in part, to ascertain the additional costs that may be incurred when fencing is included in rehabilitating a bridge. Here, he testified, the bridge did not warrant fencing.
 {¶ 11} More specifically, Meddles testified he evaluated the Plattsburg Road Bridge in 2001 after plaintiff's accident and determined only three justification items listed in ODOT's fencing policy applied: (1) its overpass was unlighted, warranting 2 points; (2) it was a designated collectors route rather than a main thoroughfare, warranting 2 points; and (3) it spanned I-70, a highly traveled interstate highway, warranting 4 points. Meddles concluded that none of the other justification items applied to the bridge, as it was not within an "urbanized area," it was not within one-half mile of another overpass bridge, it was not within one mile of a "pedestrian attraction," it was not used exclusively for pedestrian traffic, and ODOT had not received prior reports of falling objects from the overpass of this bridge or any other freeway bridges within one-half mile of this bridge. Based upon his evaluation, Meddles opined that the bridge had a total score of 8 points and did not meet the requirements for protective fencing under ODOT's fencing policy.
 {¶ 12} Lightle agreed with Meddles' evaluation of the bridge and with his conclusion that the bridge's score did not justify protective fencing under ODOT's fencing policy. As did Meddles, Lightle testified ODOT had no documented reports of incidents concerning objects falling or being thrown from any of the bridges spanning I-70 in Clark County from 1985 to July 2001.
 {¶ 13} Given the evidence presented, plaintiff did not challenge ODOT's policy determination that an existing bridge must score 10 or more points under the fencing *Page 6 
policy's established criteria before it would be considered for protective fencing. Nor did plaintiff argue that any other rationale, apart from the justification items listed in ODOT's fencing policy, required protective fencing to be installed on the Plattsburg Road bridge.
 {¶ 14} Rather, relying on Semadeni, plaintiff challenged the manner in which ODOT implemented and executed its fencing policy. Plaintiff argued ODOT was negligent in failing to timely and properly evaluate the Plattsburg Road bridge for protective fencing from 1985 to 2000 and in failing to retrofit the bridge with protective fencing before plaintiff's incident in July 2001, more than 15 years after ODOT made its policy decision to install protective fencing on existing freeway bridges throughout Ohio. Moreover, contending Meddles' evaluation was improper, plaintiff challenged ODOT's manner of scoring the Plattsburg Road bridge. Plaintiff argued that the score for the bridge should include point values for the bridge being within an "urbanized area" and near "pedestrian attractions," which would add 2 and 4 points, respectively, to the total score for the bridge and qualify it for mandatory protective fencing.
 {¶ 15} Following the bench trial, the Court of Claims issued a written decision and judgment in ODOT's favor. The court concluded "the state, of necessity, must allocate resources." In light of the primary purposes of ODOT's protective fencing policy, the court determined ODOT acted reasonably in prioritizing funding for those bridges with sidewalks. The court further noted it was not convinced the Plattsburg Road bridge ever netted a score of 10 or more points that would have made protective fencing mandatory prior to plaintiff's incident. Concluding that ODOT "did not negligently implement its policy, and that the procedures in place prior to July 9, 2001, did not support a need for *Page 7 
[protective fencing] on the Plattsburg Road bridge," the court held that ODOT is not liable to plaintiff.
II. Assignments of Error {¶ 16} Plaintiff appeals the court's judgment, presenting the following assignments of error for our review:
 I. THE LOWER COURT ERRED TO THE PREJUDICE OF APPELLANT BY HOLDING CONTRARY TO LAW THAT ODOT WAS NOT NEGLIGENT IN IMPLEMENTING ITS VANDAL PROTECTIVE FENCING POLICY PRIOR TO JULY 7 [sic], 2001.
 II. THE LOWER COURT ERRED TO THE PREJUDICE OF APPELLANT BY HOLDING CONTRARY TO LAW THAT IT WAS REASONABLE FOR ODOT TO FUND VANDAL PROTECTIVE FENCING FIRST FOR ONLY BRIDGES WITH SIDEWALKS.
 III. THE LOWER COURT ERRED TO THE PREJUDICE OF APPELLANT BY HOLDING CONTRARY TO LAW THAT ODOT'S PROCEDURES IN PLACE PRIOR TO JULY 9, 2001 DID NOT SUPPORT A NEED FOR VANDAL PROTECTIVE FENCING ON THE PLATTSBURGH ROAD BRIDGE.
 IV. THE LOWER COURT ERRED TO THE PREJUDICE OF APPELLANT BY HOLDING CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE THAT ODOT WAS NOT NEGLIGENT IN FAILING TO INSTALL VANDAL PROTECTIVE FENCING ON THE PLATTSBURGH ROAD BRIDGE PRIOR TO JULY 7 [sic], 2001.
 V. THE LOWER COURT ERRED TO THE PREJUDICE OF APPELLANT BY FAILING CONTRARY TO LAW TO APPLY THE ODOT VANDAL PROTECTIVE FENCING POLICY AND BY UTILIZING A "REASONABLE ENGINEER" APPROACH.
 {¶ 17} Plaintiff's five assignments of error are interrelated and will be addressed jointly. Together they assert that the court erred in concluding that ODOT was not *Page 8 
negligent in implementing its fencing policy with respect to the Plattsburg Road bridge. Plaintiff contends the court's judgment must be reversed as contrary to law and against the manifest weight of the evidence.
III. Generally Applicable Law {¶ 18} "[T]he state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion."Reynolds v. State (1984), 14 Ohio St.3d 68, paragraph one of the syllabus. Once, however, "the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of such activities." Id. Even so, "[o]nce a governmental entity has made a discretionary decision, it has a reasonable amount of time to implement that decision without incurring tort liability." Garland v. Ohio Dept. of Transp. (1990),48 Ohio St.3d 10, paragraph two of the syllabus.
 {¶ 19} The Supreme Court of Ohio in Semadeni, supra, reaffirmed the principles established in Reynolds and Garland, supra. InSemadeni, five years after ODOT adopted its fencing policy, a large chunk of concrete was thrown from an overpass bridge that had not been equipped with protective fencing. The concrete crashed through the windshield of Semadeni's vehicle on the freeway below and killed him. Prior to Semadeni's incident, ODOT had received reports of objects being thrown from nearby bridges onto interstate highways below, the bridge in question had been evaluated and scored 12 points, and ODOT had determined that the bridge was in need of fencing. Id. at 132. *Page 9 
 {¶ 20} In addressing the facts of the case, the Supreme Court determined ODOT's decision to adopt the justification items was a "basic policy decision" for which ODOT is immune from liability. It nonetheless concluded ODOT's subsequent "time and manner" decisions implementing the policy are themselves not entitled to immunity. As a result, the court held that ODOT possesses a duty to foreseeable travelers to take adequate measures to timely implement the fencing policy, and ODOT is not immune from liability if it negligently fails to timely implement the fencing policy and thereby proximately causes injury to a foreseeable traveler. Id. at 131, 133.
IV. ODOT's Policy Implementation {¶ 21} Plaintiff contends the Court of Claims erroneously concluded, contrary to Semadeni, that ODOT did not negligently implement its fencing policy with respect to the Plattsburg Road bridge.
 {¶ 22} In order to prevail on his negligence claim against ODOT, plaintiff had the burden to prove by a preponderance of the evidence that ODOT owed him a duty, ODOT breached that duty, and the breach proximately caused his injuries. Strother v. Hutchinson (1981),67 Ohio St.2d 282, 285; Dunlap v. W.L. Logan Trucking Co., 161 Ohio App.3d 51,2005-Ohio-2386, at ¶ 25. As a general rule, ODOT has a duty to maintain its highways in a reasonably safe condition for the motoring public; however, ODOT is not an insurer of the safety of its highways. SeeRhodus v. Ohio Dept. of Transp. (1990), 67 Ohio App.3d 723, 729-30;Knickel v. Dept. of Transp. (1976), 49 Ohio App.2d 335, 339.
 {¶ 23} Relying on Semadeni, plaintiff initially argues that ODOT here first breached a duty to timely execute its fencing policy because it failed to complete a fencing evaluation of the Plattsburg Road bridge before plaintiff's July 9, 2001 incident. As a result *Page 10 
of its failure to timely and properly evaluate the bridge, plaintiff asserts ODOT then breached a duty to timely install protective fencing on the bridge. Plaintiff claims that if ODOT had timely and properly evaluated the Plattsburg Road bridge during its 1994 reconstruction project as its own policy and procedures require, the evaluation would have revealed that the bridge here, like the bridge at issue inSemadeni, merited a score greater than 10 points and required ODOT to install protective fencing during the 1994 rehabilitation. Completing his arguments, plaintiff contends ODOT's failure to timely and properly evaluate the Plattsburg Road bridge and retrofit it with protective fencing prior to July 2001 directly and proximately caused his injuries.
 {¶ 24} Plaintiff's assignments of error thus initially ask whether the Plattsburg Road bridge ever qualified for protective fencing prior to the subject incident in July 2001. On appeal, as in the Court of Claims, plaintiff does not suggest any rationale, apart from the criteria expressly identified in ODOT's fencing policy, should be applied to determine the need for protective fencing on the bridge. Nor does plaintiff suggest that, due to a change in any circumstances, the results of an evaluation conducted before July 2001 would have been different than one conducted after 2001, assuming both evaluations were done properly. Thus the Plattsburg Road bridge, like the bridge inSemadeni, qualified for protective fencing only if it scored a total of 10 or more points on the justification items identified in ODOT's fencing policy. Semadeni, at 132. Conversely, if the bridge did not score a minimum of 10 points, it did not warrant protective fencing, and ODOT had no duty under its policy to install fencing on the bridge. As a result, even if ODOT failed to evaluate the bridge for protective fencing prior to July 2001, any breach of ODOT's duty to conduct a "timely" evaluation of the bridge would be harmless if the bridge, upon being *Page 11 
properly evaluated, did not satisfy the requisite 10-point threshold that justifies protective fencing installation under ODOT's fencing policy.
 {¶ 25} In that context, plaintiff asserts the Court of Claims' judgment is against the manifest weight of the evidence as the record lacks competent, credible evidence to support the court's evidentiary conclusion that ODOT's fencing policy did not justify protective fencing for the bridge. In support, plaintiff argues Meddles improperly evaluated the bridge, so his testimony that the bridge merits a score of only 8 points is not competent or credible. Instead, plaintiff claims, the Plattsburg Road bridge, when properly evaluated for protective fencing, merits an award of 2 points because the bridge is located within an "urbanized area" and may warrant additional points based upon prior incidents involving objects fallings from freeway overpasses.
 {¶ 26} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. In determining whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by the presumption that the findings of the trial court are correct.Seasons Coal Co., Inc. v. City of Cleveland (1984), 10 Ohio St.3d 77,80. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80. Accordingly, the relative weight to be given witness testimony and the credibility to be afforded each of the *Page 12 
witnesses is a question for the trier of fact. Rahman v. Ohio Dept. ofTransp., 10th Dist. No. 05AP-439, 2006-Ohio-3013, at ¶ 36.
A. Urbanized area
 {¶ 27} Plaintiff first claims 2 points should have been awarded to the Plattsburg Road bridge because it is located "within an urbanized area of 50,000 or more population." (ODOT's fencing policy, justification item "a.") Plaintiff contends ODOT's definition of "urbanized area" set forth in justification item "a" is an objective definition that applies here because the Plattsburg Road bridge is located within Clark County, which had a population that exceeded 50,000 in the year 2001. Plaintiff asserts the court erred because it did not apply the "objective" definition of "urbanized area" plaintiff proposed but instead accepted the opinion of the ODOT engineers who concluded, based upon their own apparently subjective judgment, that the bridge is located in a "rural" area.
 {¶ 28} Explaining his process in evaluating a bridge for protective fencing, Meddles testified that he typically uses a county map to determine the bridge's specific site location relative to other bridges, to schools and other pedestrian attractions, and to cities, towns and villages. According to Meddles, he characterizes a bridge as being within an "urbanized area" if the bridge is located within a marked corporation or city limit on a map. He stated that if he is uncertain whether the bridge is in an "urbanized area" after looking at a map, he views photographs or actually goes to the site of the bridge to see what the surrounding area is like.
 {¶ 29} Meddles did not dispute that the population of Clark County was approximately 145,000 in 2000, but he testified that he never used county populations to determine whether a bridge is located in an "urbanized area." He said he considers an *Page 13 
area to be "rural" if it has open land or farmland and if it does not have a lot of traffic congestion. With respect to the Plattsburg Road bridge in particular, Meddles testified he was able to look at a county map and determine that the bridge was not in an "urbanized area" because it was not located within any marked city or corporation limits on the map.
 {¶ 30} Lightle stated he is familiar with the area surrounding the Plattsburg Road bridge, he has stood on the bridge and looked in both directions, and he has also driven around the area surrounding the bridge. Lightle testified the Plattsburg Road bridge was "clearly in a rural area" because it neither fell within the corporate limits of any municipality or village nor displayed any urban characteristics such as land development, traffic patterns or pedestrian traffic. According to Lightle, if an average person looked at the land use there, he or she would say the bridge is in a rural setting. He further stated he is not aware of any policy or practice that uses a county's total population in determining whether a bridge is located in an "urbanized area," and he did not consider it to be relevant in making such a determination. Plaintiff offered no evidence to refute the testimony of ODOT's engineers. Nor did plaintiff present any evidence that supported his own contention that a bridge qualifies as being in an urbanized area if it is located anywhere within a county that has a population of 50,000 or more.
 {¶ 31} A "county" is a political subdivision of the state that has the fixed boundaries the General Assembly set. In contrast, an "area" is a geographical district or region having indefinite boundaries that some feature or criteria set or define, such as a farming area, a wetlands area, the Dayton area. See generally The American Heritage Dictionary of the English Language (4th Ed. 2006). A county may contain more than one type of area; conversely, one type of area may extend over more than one county. Had ODOT *Page 14 
wanted to use the term "county" instead of "area," it easily could have done so. By utilizing the word "area" rather than "county" in justification item "a," ODOT allowed its engineers to use their engineering judgment to determine the type of area surrounding the specific site of a bridge and, in particular, whether it was an "urbanized area of 50,000 or more population."
 {¶ 32} We cannot say the Court of Claims erred in concluding justification "a" did not apply to the Plattsburg Road bridge, as the court acted within its discretion in accepting the opinions of ODOT's engineers that the bridge was not located in an "urbanized area." The ODOT engineers' opinions were appropriately based upon their observations in this case, as well as their reasonable engineering judgment and experience in determining whether the bridge satisfies the "urbanized area" criteria of ODOT's fencing policy. See generallyDunlap, at ¶ 16; Lunar v. Ohio Dept. of Transp. (1989),61 Ohio App.3d 143, 147 (applying reasonable engineer standard).
 {¶ 33} The relative weight to be given the ODOT engineers' testimony and the credibility to be afforded to the witnesses is a matter best left to the trial court, and we defer to its judgment in such matters.Seasons Coal; Rahman, supra. Because some competent, credible evidence supports the conclusion of the Court of Claims that the Plattsburg Road bridge is located in a rural area and does not satisfy the criteria in justification item "a" for location within an "urbanized area," that aspect of its judgment is not against the manifest weight of the evidence.
B. Records of prior incidents of falling objects
 {¶ 34} Plaintiff also claims the Court of Claims committed reversible error in concluding that "[p]rior to plaintiff's trauma, there was no indication that any objects had *Page 15 
fallen from or been thrown from the bridge at issue." (Decision, 6.) In support, plaintiff notes that because one of the primary purposes of ODOT's fencing policy was to prevent objects falling or being thrown from bridges, ODOT was obliged to gather and consider information or reports of objects falling from bridges. As evidence of how significant such information is, plaintiff points out that reports ODOT received of objects falling or being thrown from a bridge under evaluation, or from bridges within one-half mile of that bridge, would add anywhere from 2 to 16 points to the bridge's score.
 {¶ 35} Despite the significance of those reports, plaintiff argues, the uncontroverted evidence demonstrated ODOT did not have a reliable system in place to collect and process information regarding incidents of objects falling from bridges. Plaintiff notes the court nonetheless erroneously relied on the "absence" of such information to support its conclusion that the Plattsburg Road bridge did not warrant protective fencing. Plaintiff contends no competent, credible evidence supports the court's judgment and urges this court conclude ODOT was negligent in implementing its fencing policy because it did not create a reliable system to collect reports of objects falling from bridges.
 {¶ 36} At trial, the two ODOT engineers acknowledged ODOT had no formal system in place from 1985 to July 2001 to collect and process information or data concerning incidents in which objects fell or were thrown from a bridge onto a roadway. Meddles testified such information was reported "by chance" and admitted he was unaware of plaintiff's incident when he evaluated the Plattsburg Road bridge post-accident. Lightle, however, explained that ODOT's district offices and county managers usually received any complaints and then forwarded the complaints to the appropriate ODOT people for action or resolution. Lightle stated that complaints were received from a *Page 16 
variety of sources, including motorists, municipalities, county engineers, law enforcement agencies, and ODOT employees, and he testified ODOT received a police report regarding the subject incident.
 {¶ 37} Plaintiff presented no evidence to suggest ODOT officials, other than Meddles, were unaware of plaintiff's July 2001 incident. Plaintiff nonetheless claims Meddles' testimony that he was unaware of the incident when he performed his evaluation of the Plattsburg Road bridge after plaintiff's incident evidences the inherent "flaw" in ODOT's reporting system. Meddles, however, testified such information was "not at his disposal" when he performed the evaluation. Indeed, had the information regarding the July 9, 2001 incident been provided to Meddles so that it could be included in his evaluation of the bridge after plaintiff's incident, the bridge's evaluation would not have accurately reflected the conditions that existed when plaintiff's accident occurred. Given those circumstances, the Court of Claims was not required to conclude Meddles' testimony demonstrated a flawed reporting system.
 {¶ 38} In the final analysis, plaintiff failed to demonstrate the evidence reflecting no prior reported incidents of objects falling from bridges spanning I-70 in Clark County was not competent, credible or reliable. The Court of Claims acted within its discretion in affirming ODOT's evaluation and scoring of the criteria that relate to prior incidents of objects falling from bridges, and the court's judgment in that regard is not against the manifest weight of the evidence.
C. Court of Claims' statements
 {¶ 39} Finally, we address plaintiff's challenge to certain statements the Court of Claims made. Initially, plaintiff takes issue with the court's statement that ODOT "had *Page 17 
some discretion to add [protective fencing] to a bridge if it were determined that a high number of incidents of thrown objects warranted such measure." (Emphasis added; Decision, 6.) Plaintiff contends the court's statement is contrary to the evidence presented at trial because neither justification items "f" nor "i" require a "high" number of incidents for the items to apply. Plaintiff is correct in its interpretation of the justification criteria.
 {¶ 40} Justification item "f applies if "previous reports of falling objects" were made. It does not require a "high" number of such incidents. Justification item "i" applies if the overpass in question "has had prior reported incident of a falling object." Meddles explained that item "i" requires only a single such incident. Although the court erred to the extent it mistakenly stated the two justification criteria require a "high" number of falling-object incidents, the error is harmless because the evidence presented at trial supports the court's conclusion that no reported incident of a falling object occurred from either the Plattsburg Road bridge or any other bridge spanning I-70 in Clark County.
 {¶ 41} Plaintiff next takes issue with the court's statements that "it was reasonable for ODOT to prioritize funding for those bridges with sidewalks. Indeed, ODOT explained that the Plattsburg Road bridge did not have sidewalks and that as such it was not considered pedestrian-accessible." (Decision, 6.) Plaintiff does not challenge the court's finding that ODOT reasonably prioritized funding for those bridges with sidewalks. Nor does plaintiff dispute either that the Plattsburg Road bridge did not have sidewalks within the context of ODOT's fencing policy or that justification item "b" does not apply because it pertains to an "[o]verpass with sidewalks but not in an urbanized area." Plaintiff, however, contends the evidence at trial does not support the court's suggestion that the Plattsburg Road bridge was not pedestrian-accessible. *Page 18 
 {¶ 42} The evidence at trial addressing whether the Plattsburg Road bridge was "pedestrian-accessible" pertained to justification item "j," which applies if the bridge in question has an "[o]verpass which is usedexclusively by pedestrians." (Emphasis added.) At no point did plaintiff challenge ODOT's determination that the Plattsburg Road bridge did not merit an award of points under item "j," because the bridge was not "exclusively" a pedestrian-accessible bridge. To the extent the court erroneously suggested that the Plattsburg Road bridge is not pedestrian-accessible, the error was harmless because the justification item in question does not apply here.
 {¶ 43} In sum, competent, credible evidence supports the Court of Claims' judgment that the Plattsburg Road bridge did not score sufficient points to warrant protective fencing under ODOT's fencing policy prior to July 9, 2001, and the court's judgment so concluding is not contrary to law. Pursuant to ODOT's fencing policy andSemadeni, ODOT had a mandatory duty to install protective fencing on the Plattsburg Road bridge only if the bridge scored 10 or more points according to the justification items identified in ODOT's fencing policy, notwithstanding other rationale not addressed in plaintiff's evidence that may have supported a need for fencing on the bridge. Competent, credible evidence supports a score of 8 points for the Plattsburg Road bridge, a score that does not justify protective fencing on the bridge and distinguishes this case from Semadeni, where prior reports of objects thrown from nearby bridges and the bridge's score of 12 points imposed a mandatory duty on ODOT to timely install protective fencing on that bridge.
 {¶ 44} Moreover, because the Plattsburg Road bridge never scored sufficient points to impose a duty on ODOT to install protective fencing on the bridge, any breach *Page 19 
by ODOT of its duty to timely evaluate the bridge for protective fencing prior to plaintiff's incident on July 9, 2001 was harmless because it resulted in no prejudice to plaintiff. Accordingly, the court's judgment that ODOT did not negligently implement its fencing policy is not against the weight of the evidence or contrary to law established inSemadeni. Each of plaintiff's assignments of error is overruled, and the judgment of the Court of Claims of Ohio is affirmed.
Judgment affirmed.
KLATT and SADLER, JJ., concur. *Page 1